UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LARRY J. TOLLIVER,<br><br>                Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>                Defendant. | No. CV-10-422-JPH<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on April 27, 2012 (ECF No. 10, 14). Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Marc Thayne Warner represents the Commissioner of Social Security (defendant). The parties have consented to proceed before a magistrate judge, ECF No. 4. After reviewing the administrative record and the briefs filed by the parties, the court **grants** defendant's motion for summary judgment (**ECF No. 14**).

**JURISDICTION**

Plaintiff protectively applied for disability insurance (DIB) and social security income (SSI) benefits on November 18, 2006, alleging disability beginning March 14, 2006, due to shoulder and back pain, limited lifting ability, diabetes, arthritis, panic attacks, and borderline intellectual functioning

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 1 -

(Tr. 61-63, 116, 451-462). The applications were denied initially and on reconsideration (Tr. 31-34, 36-37).

At a hearing before Administrative Law Judge (ALJ) R. J. Payne on January 28, 2010, plaintiff, represented by counsel, and medical experts testified (Tr. 470-507). On March 3, 2010, the ALJ issued an unfavorable decision (Tr. 15-28). The Appeals Council accepted additional evidence and denied plaintiff's request for review on October 22, 2010 (Tr. 7-10), making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), this final decision is appealable to the district court. Plaintiff sought judicial review on December 2, 2010 (ECF No. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of the parties, and are briefly summarized here where relevant.

Plaintiff was 41 years old at onset. He has an eighth or ninth grade education and did not earn a diploma or GED. He lives with his spouse and their two children, ages fourteen and eighteen. He has worked as a cook/kitchen helper, custodian, and laborer (Tr. 331, 486-489, 505). In 2003 he was injured on the job and diagnosed with a bicipital tendon strain (Tr. 159, 489-491). He had surgery to repair his left shoulder in March 2006 (Tr. 209).

Plaintiff testified pain interferes with sleep. Walking and sitting are painful. Mr. Tolliver can stand ten minutes, walk 500 feet, and lift ten pounds (Tr. 495-496). He drives short distances, and is sometimes able to vacuum and do laundry with rest breaks (Tr. 497-498).

Plaintiff has had panic attacks since about 2002. Currently, he experiences them about twice a week. He becomes nauseated and begins sweating. He has 2-3 migraine headaches a week. Plaintiff spends most of the day watching television (Tr. 499-501).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 52, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir.1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. *Hoffman v.*

*Heckler*, 785 F.3d 1423, 1425 (9th Cir.1986). The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett,* 180 F.3d at 1097 (9th Cir.1999)."The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602(9th Cir.1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir.1965). On review, the Court considers the record as a whole, not just the

evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir.1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir.1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.1987).

## ALJ'S FINDINGS

The ALJ found Mr. Tolliver's DIB insurance was effective through December 31, 2010 (Tr. 19). At step one, he found plaintiff did not work after onset at SGA levels (Tr. 17). At steps two and three, the ALJ found plaintiff suffers from borderline intellectual functioning (BIF), panic disorder without agoraphobia, somatoform disorder, cognitive disorder, left shoulder rotator cuff tear, and obesity, impairments that are severe but do not meet or medically equal the severity of a Listed impairment (Tr. 17-18). The ALJ found plaintiff is able to perform a range of light work (Tr. 21). At step four, he found plaintiff

is unable to perform any past relevant work (Tr. 27). At step five, relying on the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2 (the Grids), the ALJ found plaintiff can do other sedentary or light level jobs. The ALJ concluded plaintiff was not disabled as defined by the Social Security Act during the relevant period (Tr. 27-28).

**ISSUES**

Plaintiff alleges the ALJ erred when he weighed the medical evidence and found him less than credible (ECF No. 11 at 7, 16), and that new evidence incorporated by the Appeals Council supports reversal (ECF No. 11 at 14-16). At the hearing, plaintiff's counsel stipulated no Listing was met and this is a step five case (Tr. 506).

Asserting the ALJ's decision is supported by substantial evidence and free of legal error, the Commissioner asks the Court to affirm (ECF No. 15 at 16-17).

**DISCUSSION**

**A. Weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th

Cir.1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989)(citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir.2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir.1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir.1995).

///

**B. Credibility**

To aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found him less than fully credible (Tr. 23-25). Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir.2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993).

Plaintiff challenges the ALJ's credibility determination. Although there is evidence of malingering, in Dr. Pollack's test results and malingering diagnosis, the ALJ's credibility assessment is nonetheless supported by clear and convincing reasons. Plaintiff failed to attend physical therapy after two

visits, without explanation; appeared to engage in a wide array of daily activities, gave testimony inconsistent with statements to providers, and the objective evidence does not support the degree of limitation alleged (Tr. 23-25).

(1) *Failure to follow prescribed course of treatment.* Plaintiff was prescribed physical therapy in 2008 but was discharged on November 14, 2008. He attended two appointments and then failed to return, suggesting symptoms have not been as disabling as alleged (Tr. 24, 341). The ALJ notes there are no significant medical records during 2007, and he cites none, observing this suggests plaintiff's shoulder was not problematic during that time (Tr. 24). The ALJ is correct. The court does not find any 2007 medical records. Failing to follow a prescribed course of treatment or obtain treatment without adequate explanation can cast doubt on the sincerity of a claimant's testimony. *Fair v. Bowen*, 885 F.2d 597. 603 (9th Cir.1989).

(*2*) *Daily activities*. The ALJ points out that in July 2008, plaintiff went to the ER for pain after lifting a heavy cinder block two days earlier (Tr. 24, 338). In October 2008, plaintiff reported shoulder pain after throwing firewood the previous day (Tr. 24, 358-359). Plaintiff testified he went camping for three days (Tr. 502-503). The ALJ may consider a claimant's daily activities when weighing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir.1995).

(*3*) *Inconsistencies between statements and testimony*

The ALJ points out plaintiff testified he was involved in physical therapy for six months and performs home exercises most days, and is unable to raise his left arm above shoulder height

(Tr. 25, 491-492). The record shows that in 2008 he attended physical therapy twice (as noted above); moreover, treating and examining doctors regularly found range of motion was "full in all planes" (Tr. 25, 251, 268, 271, 296-297, 299). This is a factor properly considered when weighing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir.2002 (inconsistencies in claimant's statement a proper factor when determining credibility).

> *(4) Objective evidence does not support the level of claimed limitation.*

A lack of medical evidence cannot form the sole basis for discounting pain testimony, but it is a factor the ALJ may can consider when analyzing credibility. See *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.2005). As noted, the objective evidence shows treating and examining doctors have repeatedly observed plaintiff has full ROM, directly contradicting his testimony that he cannot lift his left arm above shoulder height. The lack of significant treatment records in 2007 similarly contracts the level of claimed limitation (Tr. 23-24).

The ALJ properly assessed credibility.

**C. ALJ's assessment of the medical evidence**

*1. Physical limitations*

The ALJ considered plaintiff's diminished credibility when he weighed the conflicting medical evidence.

Plaintiff argues the ALJ's finding that plaintiff is capable of a range of light work is not supported by the record (ECF No. 11 at 16-18).

An MRI of plaintiff's left shoulder on April 2, 2003 (about 3 years before onset), showed a partial thickness tear at the humeral attachment of the distal supraspinatus tendon, with no

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11 -

full-thickness tear present. A mild infraspinatus tendinosis and trace fluid in the acromioclavicular joint were thought to be degenerative. He was treated conservatively (Tr. 183).

On May 5, 2003, plaintiff's left shoulder had full range of motion. The exam was felt to be equivocal. Treating doctor Larry Lamb, M.D., notes plaintiff did not appear to be in much discomfort. On May 5 and May 13, 2003, Dr. Lamb continued to feel surgery was not appropriate. He recommended an independent medical examination (IME). On June 4, 2003, plaintiff was released for light duty work. On June 25, 2003, an orthopedist, Michael Barnard, M.D., performed the IME. At that time plaintiff was not enrolled in physical therapy, had last seen Dr. Lamb about a month earlier, and no further treatment had been recommended. Plaintiff complained his shoulder was sore, and the tips of his fingers and thumb tingle sporadically. He was not taking any medication (Tr. 183-85). Dr. Barnard found it notable that plaintiff got on the examining table and took off his "T-shirt overhead with both upper extremities, demonstrating no evidence of any problem." He was not performing at-home physical therapy exercises. Plaintiff appeared significantly deconditioned (Tr. 185-186). Testing revealed no positive impingement signs. Dr. Barnard diagnosed a partial tear, resolving, and opined the injury is "quite mild." He agreed surgery was unnecessary, strongly recommended a vigorous home exercise program, and opined no further treatment or testing was warranted. He opined lifting should be limited to 25-35 pounds until the partial tear healed completely (Tr. 187-189, 196).

In March 2006, treating surgeon Patrick Lynch, M.D., performed a diagnostic procedure which he explained was also

potentially therapeutic. His post-operative diagnosis was left shoulder recalcitrant subacromial bursitis with rotator cuff tendinitis, small tearing of anterosuperior glenoid labrum (Tr. 209).

Dr. Lynch notes in August 2006 (about 5 months after onset and surgery) plaintiff "thinks things are going well in terms of regular activities." Plaintiff and Dr. Lynch both agreed he was capable of lifting 30 pounds repetitively (Tr. 262).

The treating surgeon's opinion supports the ALJ's assessed RFC. Plaintiff's own opinion of his lifting ability also supports the assessed RFC for a range of light work.

Another IME was performed in November 2006. No ratable impairment was found (Tr. 246, 251).

The undersigned finds that the ALJ properly analyzed the record and determined that plaintiff could perform light exertion work with certain nonexertional restrictions (simple, routine tasks and instructions, minimal change, infrequently perform more complex tasks, and have superficial public contact). While plaintiff argues that the ALJ erred by failing to assess greater limitations, the record does not support a more restrictive physical RFC determination.

*2. Psychological limitations*

The ALJ again considered plaintiff's diminished credibility when he weighed the conflicting evidence of psychological limitation.

On May 27, 2008, Kristin Sims, MA, with the approval of W. Scott Mabee, Ph.D., examined plaintiff. No medical records were provided for Dr. Mabee's review. Plaintiff said anxiety,

depression, and back and shoulder pain prevent him from working. He has taken hydrocodone for two years for pain. His doctor told him not to lift more than 20 pounds due to the shoulder injury [as discussed above, this is incorrect]. In the past plaintiff took medication for depression and anxiety but stopped when he felt he no longer needed it. Currently he has anxiety attacks two to three times a week, unrelated to any particular trigger. MMPI-2 results were of questionable validity. Dr. Mabee assessed panic disorder without agoraphobia, borderline intellectual functioning (BIF), and a current GAF of 50 indicating serious symptoms or impairment. Dr. Mabee opined plaintiff should be able to follow simple verbal and written instructions but is likely to have difficulty with focus, sustaining concentration, and memory. Pace is likely to be below average due to impaired cognitive functioning (Tr. 330-334).

   On January 6 and 12, 2010, Dennis Pollack, Ph.D., examined plaintiff. He reviewed medical records and Dr. Mabee's report. Pollack states plaintiff's thinking was sometimes illogical and tangential; there was some indication of hallucinations and delusions, and "some unusual anxiety-related symptoms" were reported. His primary complaint was pain in his left shoulder, upper back pain due to a herniated disc, low back pain, right hip pain, and left carpal tunnel release in 2007. He exercises three times a week as prescribed by his doctor and can walk 500 feet before he needs to rest. Plaintiff washes dishes, makes beds, sweeps, washes clothes, camps, and fishes. He suffers from panic attacks. MMPI-2 results show a markedly elevated F-scale; other tests show malingering. Dr. Pollack diagnosed major depressive disorder, moderate and chronic; pain disorder associated with both

psychological factors and general medical condition; cognitive disorder; alcohol abuse in remission; and malingering. He assessed a GAF of 50 (Tr. 421-431). Dr. Pollack found plaintiff markedly limited in both the ability to (1) sustain an ordinary routine without special supervision, and to (2) complete a normal workday and workweek without interruptions from psychological symptoms and to perform at a consistent pace. He found no limitation in the ability to understand, remember and carry out very short and simple instructions (428-429). Dr. Pollack observes plaintiff has not undergone any type of treatment for his anxiety/panic attacks (Tr. 426).

The mental limitations assessed by the ALJ in this case are partially in accord with those assessed by Drs. Mabee and Pollack. While plaintiff argues that the ALJ erred by failing to assess greater limitations, the ALJ properly analyzed the record and determined that plaintiff had some mild symptoms but was generally functioning pretty well. The fact that he held a job for 8 years strongly indicated he is not as severely limited as either psychologist opined. Nor has plaintiff undergone any type of mental health treatment during the relevant period. The record does not support a more restrictive mental RFC finding. Even if the ALJ improperly rejected Dr. Pollack's opinion because it was at the behest of plaintiff's attorney (as plaintiff suggests), the ALJ's other reasons are specific, legitimate and supported by substantial evidence, making any error in this regard clearly harmless. The Commissioner did not err.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir.1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). The ALJ did not err when he weighed the medical evidence.

**D. New evidence incorporated by the Appeals Council**

Last, plaintiff alleges the court should reverse the ALJ's decision based on new evidence admitted by the Appeals Council (ECF No. 11 at 11, 14-16). The new evidence is a letter from treating doctor Angelika Kraus, M.D., dated April 16, 2010 (Tr. 467). The Appeals Council considered this evidence and determined that it did not provide a basis for changing the ALJ's decision (Tr. 7-10, 467).

This court has jurisdiction to remand matters on appeal for consideration of newly discovered evidence. *Goerg v. Schweiker*, 632 F.2d 582, 584 (9th Cir.1981); 42 U.S.C. § 405(g). Section 405(g) expressly provides for remand where new evidence is "material" and there is "good cause" for the failure to incorporate the evidence in a prior proceeding. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir.1984). To be material, the new evidence must bear directly and substantially on the matter in issue. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985). Also, there must be a reasonable possibility that the new evidence would have changed the outcome if it had been before the Secretary. *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380-81

(9th Cir.1984).

First, the new evidence is arguably not material. Dr. Kraus's letter simply indicates she "agrees" with the evaluations by Drs. Pollack and Mabee (Tr. 467). As the Commissioner observes, explicitly "approving" evidence in the record is cumulative rather than new. More importantly, plaintiff has not shown a reasonable probability of changing the outcome of the ALJ's determination with the new evidence. As discussed above, the ALJ's reasons for rejecting some of the most extreme limitations assessed by Pollack and Mabee are specific, legitimate, and supported by substantial evidence. To the extent Dr. Kraus "agrees" with Dr. Pollack, he diagnosed malingering. Dr. Kraus provides no basis for her opinion, and it is inconsistent with her prior treatment notes and opinions, as the Commissioner correctly points out (ECF No. 15 at 14-15). It is difficult to see how this would have changed the outcome. Furthermore, plaintiff has not show good cause for the failure to incorporate this opinion prior to the ALJ's decision. Plaintiff offers no reasons why this information was not solicited earlier. *See e.g., Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir.1984)(seeking out a new success with the agency does not establish "good cause"). Since plaintiff fails to meet the materiality and good cause requirements, the Court is not able to consider the newly submitted evidence.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 10)** is **denied.**

2. Defendant's Motion for Summary Judgment **(ECF No. 14)** is **granted.**

The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide copies to counsel, and **CLOSE** this file.

DATED this 3rd day of May, 2012.

s/ James P. Hutton
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

MOTION FOR SUMMARY JUDGMENT                                - 18 -